RICHARD REVIS v. CITY OF RALEIGH.

(Filed 24 March, 1909.)

1. **Cities and Towns—Negligence—Dangerous Sidewalks—Notice, Actual—Duty to Repair—Reasonable Time.**

   In an action against a city for injuries received by defendant falling into a hole on the sidewalk, insecurely covered, there was evidence tending to show that the city had been notified of the unsafe and dangerous condition of the covering: *Held,* if the jury find that the city had notice of the dangerous condition, it was its duty to make the conditions safe, within a reasonable time after notice, and its failure to do so is actionable negligence.

2. **Cities and Towns—Negligence—Dangerous Sidewalks—Notice Implied—Duty to Repair—Reasonable Time.**

   A city is responsible in damages for an injury directly and proximately resulting from defects and pitfalls left in the sidewalks of its streets, when by inspecting them with reasonable frequency they should have had notice thereof in time to have made them safe.

3. **Same—Questions for Jury—Burden of Proof—Instructions.**

   The question of notice of dangerous places in the sidewalks, implied from a failure of the city to inspect its streets with reasonable frequency, is one for the jury, on the evidence; and a charge, in an action to recover damages for personal injury, that the burden was on the plaintiff to satisfy the jury by the greater weight of the evidence that the city, through its proper officers, knew or should have known of their existence within a reasonable time to make them safe and avoid the injury, is correct.

ACTION tried before *Neal, J.,* and a jury, at October Term, 1908, of WAKE.

The plaintiff sues to recover damages alleged to have resulted from injuries sustained by the negligence of defendant. He alleges that on or about 6 September, 1907, and for a long time theretofore, the city of Raleigh negligently permitted a deep and dangerous hole or well to remain in and upon the sidewalk on the north side of Davie Street, between Fayetteville and Wilmington streets, in said city, over and upon which many persons passed and repassed, and negligently permitted said hole or well to be insecurely covered with boards which had become decayed and insufficient to bear up a person of ordinary weight, and negligently allowed the said hole or well to be and remain so covered as to mislead persons passing along and over the said sidewalk as to the existence of the said hole or well beneath the said covering; that said city of Raleigh knew of the existence of said hole or well and said dangerous covering, or ought to have known of the same; that on or about 8 September, 1907, the plaintiff, Richard Revis, without any fault on his part and not knowing of the existence of the said hole or well, in passing along and over said sidewalk, and being led to believe that the aforesaid covering which concealed said hole or well was boards lying on solid ground, stepped upon the said boards or covering and was suddenly and with great force precipitated into the hole or well beneath, and was painfully, seriously and permanently injured; that by reason of the injuries he received, as alleged, he suffered great bodily harm, mental anguish, etc.

Defendant denied the material allegations of the complaint, and alleged that plaintiff's injuries were caused by his own negligence.

The court, at the conclusion of the evidence, declined to submit the issue in regard to contributory negligence.

There was evidence tending to show that, several months prior to the injury, a hole had been dug for the purpose of placing a telephone pole on the edge of the sidewalk, about the curbing; that it was covered over with a plank (top of a goods box), which had become rotten and insecure; that the grass had grown around the hole; that on 6 September, 1907, plaintiff drove up to the sidewalk and got out of his wagon for the purpose of

going into a house. He thus describes the way in which he was injured: "I drove a little past the door, on account of the rocks and brick lying there in front of the door, and I got out on the curbing from the wagon hub and put my foot on the paving rock and stepped out, * * * and as I did so I made not many steps, and the next thing I knew I was in the hole; did not see any sign of the hole; did not have any idea of a hole being there; never knew there was a hole there. It looked to me as a solid piece of plank on the ground; it looked to me no more than a piece of plank lying on the ground, or something of the kind, and I did not see any difference. I stepped there just as quick as I would anywhere else, because I had no idea there was any hole there."

George L. Lane, a witness for the plaintiff, testified that "The hole had been there four or five months; the grass had grown around it; a piece of old goods box had been placed over it (very soft plank), and it had been there long enough for the grass to grow around it.' * * * I called the attention of Mr. Pope, a policeman at the time—I do not know whom he was in company with, whether it was Mr. Beasley or some other man—and he said to me, 'I will attend to that; I will see the committee on the streets,' or something like that. At the time Mr. Lee, of Lee & Broughton, came by and Mr. Pope pointed out the condition to him at the time." This witness said that he saw the board a short while after plaintiff was injured. There was other testimony tending to corroborate this witness. There was evidence in regard to the character and extent of the injuries sustained by plaintiff.

Defendant introduced J. A. Pope, who denied the testimony of Lane in regard to notifying him of the hole and the condition of the plank over it.

The court refused to submit an issue in regard to contributory negligence. Defendant excepted.

His Honor, among other instructions in regard to the duty of defendant to keep its streets in safe condition and proper repair, said: "Proper repairs implies, also, all obstructions or dangerous pits or holes or other perilous places on the streets or sidewalks of the city should be protected by proper barriers or covering. That is a duty imposed upon every city and town

in North Carolina by statute, and it is the law of the land. Now, the court also charges you that if the jury shall find from the evidence that the defendant permitted an opening in the sidewalk, insufficiently covered and protected, on one of its principal streets, upon which there is much travel, no matter for how long a time the same has remained in said unsafe condition, or for such length of time as the city authorities should have known of its existence, or if for any length of time, with the actual knowledge of the authorities of said city, and the plaintiff stepped or fell into said opening and was injured thereby, the jury should answer the first issue 'Yes.' The city does not warrant that the condition of its sidewalks shall be at all times absolutely safe. It is only responsible for negligent breach of duty, and to establish such responsibility is not sufficient to show that a defect or dangerous obstruction existed and an injury has been caused thereby. The burden is upon the plaintiff to satisfy the minds of the jury by the greater weight of the evidence that the proper officers of the city knew or by ordinary diligence might have discovered the defect or dangerous obstruction, and also that the character of the same was such that injuries to persons using the sidewalk, in the exercise of ordinary care and watchfulness, might reasonably be anticipated. If the jury shall find from the evidence that the city did not create or cause the opening in the sidewalk nor authorize the same to be done, then the city would be liable, if at all, only for negligently permitting the same to exist in a dangerous condition on the public streets. It is not negligence, *per se,* for the city to allow a covered hole upon its sidewalk. It is for the jury to determine whether or not the character of the place was such that injuries to travelers thereon might reasonably be anticipated, and whether or not the city was negligent in allowing and permitting the same to exist; and in arriving at a conclusion upon this question the jury should take into consideration the nature and character of the place, its size, location and the character and sufficiency of the covering. The burden is on the plaintiff to show either that the covered hole was originally dangerous—that is, when it was first covered—and that injuries to the public might be reasonably anticipated by the city authorities, or that it had thereafter become so, long enough before the accident for the authorities to have

known it, so as to impose upon them the obligation to put it in a proper condition. If the jury shall find from the evidence that some proper official of the city had actual notice of the existence of the hole, and if the jury shall further find from the evidence that at the time of such notice there was a reasonably secure and strong covering over the hole, then the city could only be liable, if at all, for a failure to exercise ordinary care to keep the same in a safe condition." .To these instructions defendant excepted. He further told the jury that "If they permitted that hole to stay there so long as .one week without an inspection, and a man went along there—this plaintiff went along there— and fell in, the court charges you that that would be negligence for which the city of Raleigh would be liable, because, the court charges you, that it is the duty of the city of Raleigh, the defendant in this action, to have their officers and agents to inspect the public thoroughfares of the city over which people pass and repass, and where they have a right to assume that they may do so with safety, and if they permit dangerous excavations to stand for so long a time as a week, the court charges you that would be negligence." Defendant excepted. Verdict for plaintiff. Motion for new trial; denied. Defendant duly assigned errors and appealed.

*Douglass & Lyon* for plaintiff.
*W. B. Snow* and *W. B. Jones* for defendant.

CONNOR, J., after stating the case: We concur with his Honor that there was no evidence of contributory negligence. The answer alleged that plaintiff contributed to his injury by his negligence and carried the burden of sustaining the allegation. It having failed to show either by introducing testimony or eliciting anything from plaintiff's evidence to make good its averment, the issue was properly withdrawn. It is elementary that the court should not submit an issue where there is no evidence to sustain a'finding for the party who carries the burden of proving it. The ruling of his Honor gives to the defendant the benefit, upon review, of having all of the testimony, with all inferences, most favorable to it, taken as true, or as if plaintiff

had demurred to the evidence in this respect. Considered in this way, we find no evidence of the truth of defendant's aver-ment.

While much was said in the instruction to the jury and in the argument in this Court in regard to the alleged negligence of defendant in permitting the hole for the telephone pole to be dug on or near the sidewalk, the decision turns upon the question whether there was actionable negligence in failing to provide and maintain a safe and secure covering for it. The general instruction of his Honor in regard to the duty of the defendant to keep the streets and sidewalks in a safe condition for persons traveling on them is in strict accordance with and very largely in the language of the opinion of *Mr. Justice Hoke,* in *Fitzgerald v. Concord,* 140 N. C., 110, which is fully sustained both by reason and authority. The plaintiff contends that in either of two aspects of the evidence he is entitled to recover: (1) That defendant's officers had actual notice of the hole in the street, and of the unsafe and insecure condition of the covering over it, long before the plaintiff sustained the injury; that the opportunity to repair was ample and the duty imperative. (2) That if it has failed to convince the jury that defendant had actual notice of the conditions—they had existed for so long a time prior to the time of his injury that it was its duty to have known them by inspection and examination of the streets—that by construction of law it was fixed with notice, imposing the duty of repair.

In considering the first view, if, as testified by the witness Lane and the witnesses corroborating him, the defendant's officers were notified—had their attention called to the unsafe and dangerous condition of the covering over the hole—and it was their manifest duty to promptly remove it, either by filling up the hole or placing a sound and safe covering over it, one at least sufficiently strong to have borne the weight of a man—in this view of the case the liability of the defendant is clear. "Upon notice of defects and dangers in the streets, the city must remove them within a reasonable time, and failure to do so is negligence." *Jones v. Greensboro,* 124 N. C., 310; 15 Am. and Eng. Enc., 477.

150—23

We are unable to perceive any valid excuse for the failure to repair the covering or fill up the hole, if defendant had notice, as testified by Lane. If, however, the city had no actual notice of the dangerous condition existing, the plaintiff must show that by the exercise of that degree of care and the performance of the duty of inspection of the street it would have known it. The city is not permitted to neglect the duty of reasonably frequent inspection of its streets, and when, by reason of defects and pitfalls or defective coverings of culverts, holes, etc., some one is injured, avoid liability by pleading ignorance of the conditions producing the injury. In this view of the case the question is to be submitted to the jury and in the light of all the evidence they shall say whether a reasonable time has elapsed between the origin of the dangerous condition and the injury to have enabled the city authorities to have discovered and removed or remedied it. No arbitrary rule of law in this respect can be laid down by the court. "There is and can be no fixed time from which notice may be inferred. A reasonable time in one instance may not be in another." Smith Mun. Corp., sec. 1302. "On the question of notice, implied from the continued existence of the defect, no definite or fixed rule can be laid down as to the time required, and it is usually a question for the jury on the facts and circumstances of each particular case, giving proper consideration to the character of the structure, its material, the time it has been in existence and use, the nature of the defect," etc. *Fitzgerald v. Concord, supra;* 15 Am. and Eng. Enc., 483; 1 Sherman and Red. on Neg., 643. His Honor drew this distinction in saying to the jury, "If the defendant permitted an opening in the sidewalk, insufficiently covered and protected on one of its principal streets, upon which there is much travel, no matter how long the same has been in an unsafe condition, or for such length of time as the city should have known of its existence, or if for any length of time, with the actual knowledge of the authorities," etc. While this language is not so clear as might be desired, it is evident from that which immediately followed that the jury could not have been misled. He said: "The burden is upon the plaintiff to satisfy the minds of the jury by the greater weight of the evidence that the proper officers of the city knew or by ordinary diligence might have discovered

the defect or dangerous obstruction, and also that the character of the same was such that injuries to persons using the sidewalk, in the exercise of ordinary care and watchfulness, might have been anticipated." This language is absolutely free from objection. He again said that the burden was upon the plaintiff to show the dangerous conditions, and that they had existed long enough before the accident for the authorities to have known it, so as to impose upon them the obligation to put it in a proper condition. To this point in the instruction no exception can be sustained. His Honor, in conclusion, and by way of illustration, said: "If they permitted that hole to stay there as long as one week without an inspection, and a man went along there—and this plaintiff went along there—and fell in, the court charges you that would be negligence, for which the city of Raleigh would be liable." We do not concur with this language. The court cannot, certainly in a case like this, say as a matter of law that the failure to inspect this street for a week was negligence. The period of time within which inspection of a street must be made is dependent upon the facts in each case, and should be left to the jury; it must be reasonably frequent, but what is so depends upon a number of conditions, varying in different cases. There was no evidence that only a week had elapsed since the hole was dug or the plank had become insecure; all of the evidence indicated a much longer time. Certainly the fact that a hole had been dug in the sidewalk, or near to it, four or five months before the accident, and that it was covered by a piece of goods box—"soft plank"—long enough for "the grass to grow around it," excludes the suggestion that only a week had elapsed between its placing and the injury to plaintiff.

In view of the entire charge, we cannot think that the jury could have been misled by the language to which exception is taken. It is the well-settled rule of all appellate courts to read and construe the entire charge of the court and deal with it as a whole. It is not permissible to make disconnected excerpts and seek to find reversible error. To do so would frequently result in new trials where it was manifest that no prejudicial error was committed or the jury misled. The plaintiff's counsel

insisted that upon the whole evidence he was entitled to recover. It is not clear but that an instruction, properly framed, based upon this review, would have been correct.

We have considered the other exceptions made by defendant, and find no error in his Honor's ruling in respect to them. Upon an examination of the entire record we find no reversible error. It must be so certified.

No Error.